UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MICHAEL KAUMBLULU,<br><br>Petitioner,<br><br>v.<br><br>JOSIE GASTELO,<br><br>Respondent. | Case No. 17-cv-05599-WHO (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner John Michael Kaumblulu seeks federal habeas relief from his state criminal convictions for robbery and other crimes on the grounds that the removal of a juror violated his constitutional rights. His claims lack merit. The petition for habeas relief is DENIED.

## BACKGROUND

Kaumblulu robbed a "cash advance" store in 2011. The facts were summarized by the state appellate court:

> At trial, the following evidence was revealed. On December 13, 2011, a male, later identified as [petitioner], committed armed robbery at the Allied Cash Advance store in El Cerrito. Specifically, [petitioner] entered the store, sat down at a desk across from a loan advisor, showed her his firearm, and stated: 'This is a stickup.' The loan advisor thus gave [petitioner] all the

> money in her cash register, which totaled about $300. [Petitioner]'s actions were captured by a surveillance video camera at the store.
>
> The loan advisor, who later identified [petitioner] as the robber in a photo lineup, described him as having a 'lazy eye,' wearing a Kangol hat and fake beard that had begun to fall off, carrying a cane, and 'smell[ing] really bad.'
>
> Shortly before the robbery, [petitioner] was seen on a surveillance video recording at a donut store located near Allied Cash Advance. At trial, the owner of the donut shop testified that she recalled [petitioner] buying coffee on the day in question because he was wearing a distinctive fake beard that kept coming off at the time.
>
> Four days later, [petitioner] was arrested after attempting to evade police at a traffic stop. In [petitioner]'s vehicle, police found a 'robbery kit' consisting of a fake beard and mustache, a robbery demand note, sunglasses, a cane and a Kangol style hat. Police also found in the vehicle a Walther PPK handgun.

(Ans., Dkt. No. 6-6 (State Appellate Opinion[1]) at 2.)

In 2014, a Contra Costa Superior Court jury convicted Kaumblulu of second degree robbery, possession of a firearm by a person previously convicted of a violent felony, being a felon in possession of a firearm, and second degree commercial burglary. The trial court found true various sentencing enhancement allegations. A sentence of 23 years and 4 months in state prison was imposed. Kaumblulu's attempts to overturn the decision in state court were unsuccessful. This federal habeas petition followed.

As grounds for federal habeas relief, Kaumblulu claims the removal of a juror violated his Sixth Amendment rights.

**STANDARD OF REVIEW**

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.

---

[1] *People v. Kaumblulu*, No. A142920, 2016 WL 3645048, at *1-2 (Cal. Ct. App. Jun. 30, 2016).

2

§ 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

**DISCUSSION**

Kaumblulu claims his jury trial rights were violated when the trial court wrongly dismissed a juror (Juror No. 7).

During deliberations, the jury foreperson sent the trial court a note: "Current vote is 11 guilty, 1 not guilty. Juror [No. 7] has stated he refuses to consider evidence presented by witnesses. Juror has become disrespectful and confrontational toward other jurors and foreperson. How do we proceed?" (Ans., State Appellate Opinion, Dkt. No. 6-6 at 85.)

The trial court then asked each juror about the matter. (*Id.*) This questioning

3

"revealed unanimous agreement that the foreperson's note accurately described the situation in the jury room." (*Id.* at 86.) The foreperson told the court that Juror No. 7 "refused to discuss the witness testimony or other evidence, and was inappropriately laughing, joking, acting 'very condescending' to others, and 'talking about nonrelevant facts'"; refused to vote on the first ballot or give his opinion about defendant's guilt; and "had become hung up on the absence of DNA evidence even though, as the foreperson reminded him, it was not part of the case." (*Id.*) In response to the foreperson's comment about DNA evidence, Juror No. 7 said, "Well, who are you to tell me not to talk about it?" (*Id.*) The foreperson "advised the trial court that he did not believe further instruction from the court would remedy the situation." (*Id.*)

"Several jurors confirmed Juror No. 7 was failing to deliberate or to consider the evidence, was unreasonably focused on extrinsic matters, and was behaving in a disrespectful and inappropriate manner to others." (*Id.*) When one juror asked Juror No. 7 during deliberations what his thoughts were, he said, "I don't even want to answer that." (*Id.*) Another juror said that Juror No. 7 would discuss "his observations and whatever else he can conjure up in his head," but not the evidence. (*Id.*) Other jurors confirmed that Juror No. 7 had a "fixation on the lack of DNA evidence"; refused to explain why he disagreed with the other jurors; and was "going off on his own tangents," which included "what he would want to have presented if he were in the movies." (*Id.*) One juror felt Juror No. 7 "was not really keeping an open mind" and that his refusal to consider the law and the evidence as instructed "is really hindering everyone else and everyone else's opinion trying to be logical and reasonable." (*Id.* at 87.) In the end, all eleven jurors confirmed that Juror No. 7 "refused to deliberate with the group and remained focused on wholly extrinsic matters." (*Id.* at 86.)

The trial court also questioned Juror No. 7. When asked whether he could base his verdict on the law and evidence, he said, "Your Honor, I swear that I would only base my decision on the law and the evidence." (*Id.* at 88.) After telling Juror No. 7 that "DNA is not part of this case," the trial court said, "So, I need a promise from you that you are not

4

sitting there telling them, 'I need DNA' because we have what we have, and you need to base your verdict on what we have, if you can reach a verdict. Okay?" (*Id.*) Juror No. 7 responded, "Yes, your Honor." (*Id.*) The trial court also heard from counsel for both parties. (*Id.*)

The trial court ultimately excused Juror No. 7 "for good cause" and replaced him with an alternate:

> [B]ased upon everything that I have heard, that he is failing to perform his duty to deliberate. He . . . has said in no uncertain terms according to many of the jurors, if not all, that it's DNA, it's my way or the highway. He wants DNA. This case was never a case involving DNA, and that was made clear in voir dire. [¶] He — it was evident from all of the witnesses — all of the jurors that he would not consider the evidence before him. He wanted evidence that did not exist.

(*Id.*)

On appeal, Kaumblulu's claim that the trial court's decision was improper and violated his jury trial rights was rejected. The evidence showed "a demonstrable reality" that Juror No. 7 "refused to deliberate with the other jurors." (*Id.* at 90.) Juror No. 7's stated willingness to properly consider the evidence was undermined by "ample evidence" from the other jurors. (*Id.* at 91.)

Kaumblulu asserts here that the juror's removal violated state statutes or was contrary to state case law. However, federal habeas relief can be granted only for violations of federal law. I can only look to whether there was a federal violation.

Kaumblulu also claims that the removal of Juror No. 7 was constitutionally improper. He contends that Juror No. 7 was removed because he was the lone holdout for acquittal, not because he refused to deliberate. (Trav., Dkt. No. 9 at 8.)

There is no United States Supreme Court case concerning whether the dismissal of a sole dissenting juror violates the Sixth Amendment right to a jury. This means that there is no "clearly established" law for purposes of review under AEDPA. Federal habeas relief is therefore unavailable.

*Perez v. Marshall*, 119 F.3d 1422 (9th Cir. 1997), is instructive. In *Perez*, the state

5

trial court had removed a juror who was "an emotional wreck" and "emotionally out of control." *Id.* at 1425. The juror's apprehension at being responsible for someone going to prison wore at her during deliberations. *Id.* at 1424. Tears and scenes in the jury room had ensued. *Id.* The foreperson said that the juror, Robles, was "basically in pieces" and that one cannot "get somebody to be rational when they are in that state." *Id.* at 1425. Robles had at first voted guilty but later changed her mind, becoming a "holdout" juror. *Id.* at 1424-25.

After an inquiry, the trial court removed the juror. *Id.* at 1425. Her emotional state rendered her incapable of continuing to participate. *Id.* This decision was based "not only from what she expressed but what you could tell by looking at her." *Id.* She was replaced, and a reconstituted jury found the defendant guilty. *Id.* The defendant sought federal habeas relief on grounds that the trial court had removed the sole dissenting juror in violation of the Sixth Amendment. *Id.*

This claim was rejected. "The fact that the trial judge knew that Robles was the sole juror holding out for an acquittal when he dismissed her does not invalidate his decision to excuse her from jury service." *Id.* at 1427. Nothing in the record indicated that the trial court was influenced "by the desire to have a unanimous jury verdict." *Id.* "In fact, the record shows that the district court was forced to act, not because of Robles's status as a holdout juror, but because of Robles's emotional inability to continue performing the essential function of a juror-deliberation." *Id.* The Ninth Circuit noted that the trial judge had conducted a proper inquiry and "was in a superior position to observe Robles's physical appearance and demeanor and thereby to determine her ability to continue deliberating." *Id.* at 1427.

*Perez* dooms petitioner's claim. The removal of Juror No. 7 was a reasonable decision based on strong evidence that he refused to deliberate, acted disrespectfully to the other jurors, and "was unreasonably focused on extrinsic matters." This decision was arrived at after a thorough inquiry of the jurors, whose credibility the trial judge was in a superior position to assess. This federal habeas court must accord the highest deference to

6

the trial court's credibility determination. *See Knaubert v. Goldsmith*, 791 F.2d 722, 727 (9th Cir. 1986).

Furthermore, as in *Perez*, that Juror No. 7 might have been a holdout juror does not invalidate the trial court's decision. Nothing in the record indicates that the trial judge was influenced by a desire to have a unanimous verdict or by any other impermissible motivation. If anything, the removal of Juror No. 7 preserved petitioner's right to have "a jury capable and willing to decide the case solely on the evidence before it." *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)).

Kaumblulu claims that "there was not a unanimous agreement between the jurors in regard to the accuracy of the foreperson's allegation that Juror 7 was refusing to deliberate." (Trav., Dkt. No. 9 at 14.) Juror No. 10 did not agree with the foreperson's statement, while Juror Nos. 2, 3, 4, 5, 6, 8 and 9 all agreed that the foreperson's note was accurate. (*Id.* at (Ans., Reporter's Transcript, Dkt. No. 6-5 at 253, 243, 248, 249, 252, 254, 257, and 258.)

Unanimous agreement among the jurors about whether a juror is deliberating is not the standard by which removals are judged. As the state appellate court noted, the trial court had "ample evidence" from other jurors.

Kaumblulu also points to testimony in the record in which jurors stated variously that Juror No. 7 discussed his reasoning and may have been at times deliberating. (Trav., Dkt. No. 9 at 21.) But he leaves out crucial facts and his conclusions are at best misleading and at worst deceptive. For example, Juror No. 1 said that No. 7 told her his reasoning, but that reasoning was based on "his observations and whatever else he can conjure up in his head." (Ans., Dkt. No. 6-5 at 243.) Juror No. 2 stated that No. 7 had discussed the facts and the law, but his view of the law was "real personal" and he "was not objectively looking at it." (*Id.* at 237.) Juror No. 3 testified that No. 7 was deliberating but was focused on extrinsic matters, such as DNA evidence. (*Id.* at 248-49.) Juror No. 4 said that after lunch No. 7 appeared to deliberate. (*Id.* at 251.) But when the trial court

7

asked whether No. 7 was focused on the witnesses and evidence, Juror No. 4 replied, "Absolutely not." (*Id.* at 252.) Juror No. 5 stated that No. 7 was explaining his opinion but "not deliberating." (*Id.*)

I must defer to the reasonable decision of the state courts to reject Kaumblulu's claim. California's statutory standard for removing jurors, which is set forth in Cal. Penal Code § 1089 and is the one petitioner's trial judge used, "is not deficient in terms of protecting a defendant's Sixth Amendment right to an impartial jury." *Bell v. Uribe*, 748 F.3d 857, 868 (9th Cir. 2014), citing *Perez*, 119 F.3d at 1426. Accordingly, this claim is DENIED.

## CONCLUSION

The state court's adjudication of petitioner's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Ninth Circuit.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

**Dated:** February 14, 2019

WILLIAM H. ORRICK
United States District Judge